IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Pittsburgh,                          :
                                             :
                    Appellant                :
                                             :
          v.                                 :  No. 1300 C.D. 2019
                                             :  Argued:  May 15, 2020
Fraternal Order of Police, Fort Pitt         :
Lodge No. 1                                  :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                    FILED:  November 2, 2020


          City of Pittsburgh (City) appeals from the August 14, 2019 order of
the Court of Common Pleas of Allegheny County (trial court) granting the petition
to vacate an arbitration award filed by the Fraternal Order of Police, Fort Pitt
Lodge No. 1 (FOP).  The Arbitrator's award denied the FOP's grievance and
determined that the City had the right to set eligibility requirements for promotion
to the position of lieutenant.  The trial court vacated the Arbitrator's award on the
ground that the Arbitrator exceeded her authority by modifying the parties'
Working Agreement (Agreement)[1] and in applying the Policemen's Civil Service

---

[1] Reproduced Record (R.R.) at 1a-163a.

Act (Act)[2] to interpret the Agreement. We conclude that the trial court exceeded the narrow certiorari scope of review applicable to Act 111[3] arbitration awards, and we reverse.

Facts and Procedural History

The City and the FOP entered an Agreement for the term January 1, 2010, through December 31, 2014. In 2014 and 2015, the parties engaged in bargaining for a renewed term. During the negotiations, the FOP proposed to amend Section 18D of the Agreement[4] to require that promotional examinations for all bargaining unit positions include both oral and written components and to require 10 years of service as a prerequisite for promotion to lieutenant. R.R. at 217a-18a. The City proposed an amendment stating, "Sergeants with a minimum of ten years of service [with the bureau] will be eligible to take the promotional exam for lieutenant." R.R. at 218a.

The matter was submitted to an Act 111 interest arbitration panel, which issued an award on July 25, 2016. The award modified Section 18D of the Agreement by requiring oral and written examinations of candidates for promotion and increasing the years-of-service eligibility requirement for the position of

_____

[2] Act of August 10, 1951, P.L. 1189, *as amended*, 53 P.S. §§23531-23540.

[3] The Act of June 24, 1968, P.L. 237, 43 P.S. §§ 217.1 - 217.12, is commonly known as Act 111.

[4] Within the record, this provision is referenced to as "18D," "18(D)," and "18(d)." To avoid confusion, in this opinion we refer to it throughout as "Section 18D."

lieutenant from 6 years to 10 years.[5]  Specifically, the interest arbitration award stated:

> Section 18D of the [Agreement] shall be amended to require both written and oral examinations of candidates for promotions.  In general, the written and oral examination results shall be weighted on a 60% (oral) 40% (written) basis subject to adjustments to comply with federal, state or local discrimination laws.  Oral examinations shall be conducted by external, appropriately trained individuals who have been vetted by the City and the FOP.  The FOP may submit an objection to a specific examiner by providing written evidence demonstrating that the individual is not qualified to perform oral examinations.  *Candidates for the position of Lieutenant shall have ten (10) years of service as a City officer as a prerequisite for eligibility for promotion.*  The City shall retain the right to determine the manner in which candidates are tested to ensure that such testing does not violate federal, state or local discrimination laws.

R.R. at 170a (emphasis added).

In February 2017, the City and the FOP met to discuss implementation of the new oral testing process established by the interest arbitration award.  At the same time, the parties discussed the issue of rank skipping.  The City advised the FOP representatives that it would limit eligibility for the next lieutenant's examination to *sergeants* with a minimum of 10 years of service.  As reflected in correspondence between the parties, the FOP recognized that the City's civil service director had authority to establish eligibility

---

[5] As set forth in the 2010-2014 Agreement, Section 18D previously stated, "Promotional candidates must have completed a minimum of six (6) years of service at the time of such examination in order to receive a length of service credit."  R.R. at 99a.

3

requirements for promotions. R.R. at 204a-06a. The FOP acknowledged that it did not object to the elimination of rank skipping, but, rather, insisted that the same standard must be applied to eligibility for the position of commander.[6] The FOP proposed that the parties enter a memorandum of understanding (MOU) addressing that issue. *Id.*

The City responded that it had the right to establish promotional eligibility requirements; it would limit eligibility for the lieutenant's examination to sergeants; and it would not execute an MOU on this topic. R.R. at 206a. The FOP notified the City that it would file a grievance if the same standard was not applied for every rank within the bureau. R.R. at 201a-08a.

On March 6, 2017, the FOP filed a grievance challenging the City's position with respect to promotional examinations. R.R. at 214a. The City denied the grievance through Step I and Step II of the grievance procedure. The FOP demanded arbitration, and a hearing was held on June 11, 2017. The issue before the Arbitrator was whether the City was contractually permitted to modify the eligibility requirements for the police lieutenant examination by limiting eligibility to officers who have attained the rank of sergeant. R.R. at 233a.

The FOP argued that the Agreement incorporates the Act by reference and that the Act does not prohibit promotions to be made by skipping rank. The FOP noted that the promotional examination process is an express term of the parties' Agreement and observed that when the parties proposed changes to Section 18D of the Agreement, the City did not object or assert that the issue of promotional eligibility involves a managerial right. Furthermore, according to the

---

[6] The position of commander is outside the bargaining unit.

4

FOP, the City waived any managerial right to set promotional criteria when it engaged in bargaining.[7]

The FOP emphasized that the interest arbitration award did not adopt the City's proposal to limit eligibility for the lieutenant's examination to sergeants with 10 years of service. Finally, the FOP offered uncontradicted testimony to show that, as a matter of past practice, police officers had been allowed to sit for the lieutenant's exam.

In response, the City asserted that a change in promotional qualifications is a managerial prerogative and is not subject to mandatory bargaining under Act 111. Therefore, the City maintained that it was not obligated to bargain with the FOP over the establishment of rank requirement for lieutenant promotions. As to the FOP's assertions concerning past practice, the City argued that past practice can be used to prove an enforceable condition of employment, but it cannot be used to prove a working condition that is not a mandatory subject of bargaining. *Ellwood City Police Wage and Policy Unit v. Pennsylvania Labor Relations Board*, 731 A.2d 670 (Pa. Cmwlth. 1999).

The City further argued that management rights cannot be abridged by a past practice. *Town of McCandless v. McCandless Police Officers Association*, 952 A.2d 1193 (Pa. Cmwlth. 2008). Thus, even assuming that it created a working condition by past practice, the City argued that it was not foreclosed from reclaiming its management right. According to the City, it did so here through the Act 111 arbitration process; once an impasse was reached, the right to establish

---

[7] Alternatively, the FOP argued that the voluntary surrender of a managerial right will be enforced during at least the term of the current agreement. *Police Bargaining Unit of Borough of Montoursville Police Department v. Borough of Montoursville*, 634 A.2d 830 (Pa. Cmwlth.1993).

promotional qualifications would have reverted to the City. Additionally, the City argued that contrary to the FOP's assertions, the Act does not proscribe the implementation of promotional requirements.

In the September 15, 2017 decision and award,[8] the Arbitrator cited the Agreement's reference to the Act to conclude that the City has the right to determine eligibility for promotional testing. The Arbitrator found the evidence did not establish that the City unequivocally gave up its managerial right by past practice. Finally, the Arbitrator found that the City did not give up this managerial right during bargaining. R.R. at 238a-41a.

In relevant part, the Arbitrator reasoned as follows. The Act provides the City with the authority to make rules and regulations concerning positions in the bureau of police as well as the promotional examinations for such positions. The Act also sets forth a limitation, that the City shall not require, as a condition of taking a promotional examination, that an applicant have any experience or service other than the completion of four years of service in the bureau. This statutory language authorizes the City to set requirements for promotional examinations with the limitation that any service and experience requirement is limited to four years in the bureau of police.

The Arbitrator explained that Section 4B of the Agreement specifically references the Act and reflects the parties' recognition that the procedure for promotions provided for in the Act is to be applied with regard to the bargaining unit. Additional parameters addressing promotional testing were then included in a separate provision of the Agreement, Section 18D, as set forth in the interest arbitration award. With regard to the position of lieutenant, the interest

_____
[8] R.R. at 231a-41a.

6

arbitration award set an eligibility requirement of "ten (10) years of service as a City officer as a prerequisite for eligibility for promotion." R.R. at 239a.

Additionally, the Arbitrator found that the City has a managerial right to set promotional standards and eligibility requirements for positions that was not changed by the interest arbitration award amending Section 18D of the Agreement. Rather, the interest arbitration award only added promotional testing parameters, including the eligibility prerequisite that candidates for the position of lieutenant have 10 years of service as a City officer. Based upon the language of the Act, Section 4B of the Agreement, and Section 18D of the Agreement as amended by the interest arbitration award, the Arbitrator concluded that the City continues to have the right to determine eligibility for promotional testing. Accordingly, the Arbitrator denied the grievance.

The FOP filed a petition to vacate the arbitration award. Following oral argument, by order dated August 14, 2019, the trial court vacated the Arbitrator's award. In its October 2, 2019 opinion, the trial court noted that the parties' Agreement expressly limits the Arbitrator's authority, stating that the Arbitrator "shall not have the right to add to, subtract from, modify or disregard any of the terms or provisions of the Agreement." R.R. at 30a. The trial court concluded that the Arbitrator exceeded her authority by adding an express term to the parties' Agreement. More specifically, the trial court concluded that the Arbitrator impermissibly modified Section 18D of the Agreement by effectively substituting the word "sergeant" for "City officer." Trial court's October 2, 2019 opinion at 6.

The trial court acknowledged that matters of managerial decision-making that are fundamental to public policy, including the selection and direction

7

of personnel, are not subject to mandatory bargaining under Act 111. *F.O.P. Rose of Sharon Lodge No. 3 v. Pennsylvania Labor Relations Board*, 729 A.2d 1278, 1282 (Pa. Cmwlth. 1999). Nevertheless, the trial court concluded that the Arbitrator erred in relying on the Act to determine that the City has authority to set requirements for promotional examinations. Additionally, the trial court criticized the Arbitrator's interpretation of the Act and its application to the parties' Agreement. Further, the trial court noted that while an arbitrator cannot mandate the performance of an illegal act, a public employer can voluntarily agree to an unlawful provision and cannot thereafter raise illegality as a defense to the existing award. The trial court found that in this instance, the City waived its right to determine the rank needed for an officer to sit for the lieutenant position when it bargained over that requirement and then failed to timely appeal the Act 111 interest arbitration award, which excluded any rank requirements. Accordingly, the trial court granted the petition and vacated the Arbitrator's award.

## Discussion

On appeal to this Court, the City argues that the trial court exceeded the narrow certiorari scope of review applicable to Act 111 arbitration awards when it vacated the Arbitrator's award based on an error of law. Relatedly, the City argues that the trial court erred in concluding that the Arbitrator exceeded her authority.

Initially, in *Township of Ridley v. Fraternal Order of Police Lodge #27*, 718 A.2d 872 (Pa. Cmwlth. 1998), we explained:

> [A]n appellate court's scope of review of an arbitrator's decision in an Act 111 grievance procedure is narrow certiorari. [*Pennsylvania State Police v. Pennsylvania*

8

*State Troopers Association (Betancourt)*, 656 A.2d 83, 89 (Pa. 1995).[9]] Accordingly, a court may only consider questions regarding: (1) the jurisdiction of the arbitrator; (2) the regularity of the proceedings; (3) an excess of the arbitrator's powers; and (4) a deprivation of constitutional rights. *City of Philadelphia v. Fraternal Order of Police Lodge No. 5*, 677 A.2d 1319 (Pa. Cmwlth.), *appeal withdrawn*, *City of Philadelphia v. FOP Lodge No. 5*, [682 A.2d 312 (Pa. 1996)]. For a grievance arbitrator to exceed his or her authority, the arbitrator would have to either mandate an illegal act or grant an award that addresses issues beyond the scope of the collective bargaining agreement or that extends beyond the terms and conditions of the employment. *Town of McCandless v. McCandless Police Officers Ass'n*, 677 A.2d 879 (Pa. Cmwlth. 1996), *appeal denied*, [692 A.2d 568 (Pa. 1997)].

*Township of Ridley*, 718 A.2d at 874. The City asserts that although the trial court stated that the Arbitrator exceeded her authority, the trial court did not conclude that the Arbitrator mandated an illegal act or addressed issues outside the scope of the Agreement. Instead, the trial court concluded that the Arbitrator misinterpreted

---

[9] In *Betancourt*, 656 A.2d at 85 n.4, the Supreme Court clarified:

The narrow certiorari test has sometimes been referred to as a "standard of review" by this Court and lower courts; this is incorrect. As this Court recently set out in *Morrison v. [Department of Public Welfare*, 646 A.2d 565 (Pa. 1994)], "scope of review" and "standard of review" are two distinct legal concepts. "Scope of review" refers to "'the confines within which an appellate court must conduct its examination.' (citation omitted). In other words, it refers to the *matters* (or "what") the appellate court is permitted to examine." [646 A.2d at 570]. "Standard of review," on the other hand, "refers to the *manner* in which (or "how") that examination is conducted." *Id.* As narrow certiorari sets the confines in which an appellate court may conduct its examination, it sets a *scope* of review, and not a *standard* of review. [(Emphasis added.)]

9

the Act in determining that establishing promotional requirements was a matter within the City's managerial authority and was not prohibited by the plain language of the Agreement.

The City argues it is well settled that under the narrow certiorari scope of review, an arbitrator's award may not be disturbed based on an error of law. *Betancourt,* 656 A.2d at 90 ("An error of law alone will not warrant reversal under the narrow certiorari scope of review."); *Fraternal Order of Police Lodge No. 19 v. City of Chester*, 845 A.2d 230, 233 (Pa. Cmwlth. 2004) ("A mere error of law will not support a court's decision to reverse an Act 111 arbitrator's award."). Further, Pennsylvania courts have long held that "an issue of contractual interpretation presents a question of law." *Township of Ridley*, 718 A.2d at 874. We agree that the trial court erred in relying on a perceived error of law to disturb the Arbitrator's award. *Betancourt.*

The City also notes that promotional requirements are not a subject of mandatory bargaining, but, rather, are a matter of managerial prerogative. *F.O.P. Rose of Sharon Lodge*.[10] The City argues, and we agree, that the trial court erred

---

[10] In *F.O.P. Rose of Sharon Lodge*, we affirmed the Pennsylvania Labor Relations Board's dismissal of an unfair labor practice charge against the City of Sharon (city) after determining that the city's unilateral reduction of a service requirement for promotion eligibility did not affect a mandatory subject of collective bargaining. In doing so, we relied on prior decisions applying a relational relationship test to determine what are managerial prerogatives. *See, e.g.*, *Delaware County Lodge No. 27, Fraternal Order of Police v. Pennsylvania Labor Relations Board*, 722 A.2d 1118 (Pa. Cmwlth. 1998), *Plumstead Township v. Pennsylvania Labor Relations Board*, 713 A.2d 730, 733 (Pa. Cmwlth. 1998). We stated:

> In construing this language [Section 1 of Act 111], our courts have concluded that an issue is presumptively bargainable if it bears a rational relationship to an employee's duties. *Township of Upper Saucon v. Pennsylvania Labor Relations Bd.*, [620 A.2d 71, 73 (Pa. Cmwlth. 1993)]. However, where a managerial policy concern

**(Footnote continued on next page…)**

10

and exceeded its scope of review when it disregarded the Arbitrator's findings and determined that the City bargained away or waived its managerial rights to set promotional qualifications.

In rebuttal, citing *City of Philadelphia v. City of Philadelphia, Fraternal Order of Police, Lodge No. 5*, 717 A.2d 609 (Pa. Cmwlth. 1998), the FOP maintains that the Arbitrator exceeded her authority by issuing an award that conflicts with the express terms of the Agreement. Under the narrow certiorari scope of review, an arbitrator exceeds her authority when she mandates that an illegal act be carried out or addresses questions not submitted by the parties. *Id.* at 610-11. Here, there is no contention that the Arbitrator mandated the performance

---

**(continued…)**

> substantially outweighs any impact the issue will have on employees, the issue will be deemed a managerial prerogative, rendering the issue nonbargainable. 620 A.2d at 74; *Frackville Borough Police Dep't v. Pennsylvania Labor Relations Bd.*, 701 A.2d 632, 634 (Pa. Cmwlth. 1997) (A subject may be a managerial prerogative which need not be bargained, even though it may affect employee wages, hours or working conditions.); *City of Sharon v. Rose of Sharon Lodge No. 3,* [315 A.2d 355, 358 (Pa. Cmwlth. 1973)] (Act 111 does not remove all regulation of policemen from the scope of a municipality's managerial decision-making, particularly any regulation which might be considered "essential for the proper and efficient functioning of a police force.").
>
> It is within a [t]ownship's prerogative to establish and utilize a method to aid in selecting and directing its personnel and in measuring and evaluating their performance. The ability to formulate policies in these areas is essential for the proper and efficient functioning of a police force.

*F.O.P. Rose of Sharon Lodge,* 729 A.2d at 1281 (quoting *Delaware County Lodge No. 27,* 722 A.2d at 1121).

of an illegal act, and there is no dispute that the City's prerogative to establish promotional eligibility was an issue before the Arbitrator.

The FOP further argues that the parties' Agreement incorporates the Act, and the Act does not prohibit rank skipping. However, the Act and the Agreement set forth minimum eligibility requirements; neither the Act nor the Agreement expressly permits rank skipping or expressly restricts the City's right to limit eligibility for promotional examinations. Consequently, the Arbitrator's award does not conflict with the terms of the parties' Agreement. More importantly, the Arbitrator's interpretation of the Agreement is beyond the scope of the trial court's review. *Betancourt*; *Township of Ridley.*

Relying on *Township of Upper Saucon v. Pennsylvania Labor Relations Board*, 620 A.2d 71 (Pa. Cmwlth. 1993), the FOP argues that the waiver of a managerial right may be found if it is expressed by clear and unmistakable language. The FOP asserts that in this instance, the City waived its managerial right to establish promotional eligibility when it bargained for eligibility criteria for the positions of sergeant and lieutenant. We disagree.

In *Township of Upper Saucon*, the parties' collective bargaining agreement (CBA) included a management rights clause providing as follows:

> The management of the Department and the direction of the working forces is vested exclusively in the [t]ownship and the [t]ownship shall continue to have all rights customarily reserved to Management, including . . . *the right to schedule hours or require overtime work*; and the right to establish or continue overall, reasonable policies, practices, procedures, rules and regulations pertaining to the performance, discipline, appearance, conduct and General Operation of the Department.

620 A.2d at 73 (emphasis added)  The CBA also provided that "any of the rights, power or authority the [t]ownship had prior to the signing of this [CBA] are retained by the [t]ownship, except those specifically abridged, granted or delegated to others or modified by this [CBA]." *Id.*

For 10 years, police officers in the Township of Upper Saucon (township) worked rotating shifts: a 7-2 first shift (7 daytime shifts followed by 2 days off); a 7-2 second shift (7 middle hour shifts followed by 2 days off); and a 6-4 third shift (6 night shifts followed by 4 days off), with an additional 13 days off per year and every fourth Saturday off.  The township, believing the parties' CBA authorized it to do so, unilaterally changed the shift system to a 5-2 schedule, with permanent shift assignments based on seniority.  The union filed charges of unfair labor practices, alleging that the township was required to negotiate the schedule change as a mandatory subject of bargaining under Act 111.  The Pennsylvania Labor Relations Board found that the township committed an unfair labor practice, and this Court affirmed.  In relevant part, we rejected the township's argument that the union waived its right to bargain over changes to the shift system.  Specifically, we explained that the broad language of the management clause providing the township "the right to schedule hours" was not the kind of clear and unmistakable language necessary to establish waiver.  620 A.2d at 75-76.  We also noted that the change was not merely a "scheduling" matter but instead was a fundamental change in the nature of the shift system that had been followed for at least 10 years. 620 A.2d at 75.

Applying our analysis in *Township of Upper Saucon* to the record in this case supports the conclusion that the City *did not* waive its managerial right to establish eligibility for promotional examinations.  In addition to the absence of

13

unambiguous language reflecting such waiver, the record reflects the FOP's acknowledgment of the City's managerial prerogative to establish promotional eligibility standards. Again, more importantly, the trial court exceeded its scope of review in disturbing the Arbitrator's determination regarding waiver.

Accordingly, having concluded that the trial court exceeded its scope of review of the Act 111 arbitration award, we reverse the trial court's order.


_____
MICHAEL H. WOJCIK, Judge


Judge McCullough concurs in the result only.

14

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Pittsburgh,                    :
                                       :
            Appellant                  :
                                       :
        v.                             : No. 1300 C.D. 2019
                                       :
Fraternal Order of Police, Fort Pitt   :
Lodge No. 1                            :

## O R D E R

AND NOW, this 2nd day of November, 2020, the order of the Court of Common Pleas of Allegheny County, dated August 14, 2019, is REVERSED.

_____
MICHAEL H. WOJCIK, Judge